IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

JOHN REGAN, #R-14454, )
)
    Plaintiff, )
)
vs. ) CASE NO. 12-cv-575-JPG
)
TERRY ANDERSON, )
DAVE REDNOUR, S.A. GODINEZ, )
MELISSA SAUERWINE, and )
JEANETTE COWAN, )
)
    Defendants. )

## MEMORANDUM AND ORDER

**GILBERT, District Judge:**

Plaintiff John Regan, an inmate in Menard Correctional Center ("Menard"), brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. Plaintiff is serving consecutive 25-year sentences for two counts of aggravated criminal sexual assault and one count of aggravated kidnaping, and seven year sentences for burglary and robbery. This case is now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening.**– The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal.**– On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
>     (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
>     (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Although the Court is obligated to accept factual allegations as true, *see Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011), some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Additionally, Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id*. At the same time, however, the factual allegations of a pro se complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Upon careful review of the complaint and supporting exhibits, the Court finds that Plaintiff's claim should receive further review.

**The Complaint**

Prior to his conviction on the charges for which he is now serving time, Plaintiff was incarcerated in the Cook County Jail. He had been a member of the Y-LO Cobra street gang, which is affiliated with the Latin Folks gang (Doc. 1-1, p. 22). While in Cook County Jail, Plaintiff decided to renounce his membership in the gang. As a result, other gang members beat, stabbed, and seriously injured him on two occasions between 1999 and 2001, leading to his hospitalization both times (Doc. 1, p.3; Doc. 1-1, p. 21).

After Plaintiff was convicted and transferred to the custody of the Illinois Department of Corrections ("IDOC"), he received death threats from members of his former gang. In February 2005, while Plaintiff was in Stateville Correctional Center ("Stateville"), he was involved in a "self-defense" fight with a Gangster Disciples member, who then put out a "smash on sight" order on him (Doc. 1, p. 4; Doc. 1-1, p. 21). Because of this and other death threats, Plaintiff requested placement in protective custody ("PC"). His PC request was approved in July 2005, and he was transferred to Pontiac Correctional Center ("Pontiac"), where he remained in PC (Doc. 1-1, p. 21, Doc. 1, p. 4).

Plaintiff became a Buddhist in 2006, and since then has continued to adhere to the tenets of that faith, which include pacifism, non-violence, and refusal to defend oneself even when physically attacked (Doc. 1, p. 4). Since his conversion, he has not been involved in any physical or verbal conflicts (Doc. 1-1, pp. 14, 22). Plaintiff states he is not physically large, standing five feet, four inches tall, and weighing 158 pounds (Doc. 1, p. 3). He still has gang tattoos that mark him as a member of the Y-LO Cobras. He claims that all of these factors make him particularly vulnerable to attack by his former gang associates and their allies if he were returned to general population (Doc. 1-1, p. 3).

On May 11, 2011, Plaintiff received a disciplinary ticket for having six thorazine pills in his possession, which resulted in his transfer out of PC to segregation in Pontiac (Doc. 1-1, pp. 14, 21). His PC status was then reviewed, and was ultimately revoked (Doc. 1-1, p. 21). Plaintiff was transferred to Menard on October 7, 2011 (Doc. 1, p. 4). In November 2011, he requested to be placed back into PC, based on his history of prior death threats, the attacks in Cook County Jail, his religious beliefs, and his tattoos. His PC request was denied by

Defendants Cowan, Sauerwine, and Rednour. Plaintiff appealed the PC denial and was interviewed by Defendant Anderson (Chairperson of the IDOC Administrative Review Board), who denied the appeal on February 9, 2012 (Doc. 1, p. 6). Defendant Godinez (the IDOC Director) approved the denial of Plaintiff's appeal. Plaintiff was then sent back to general population, where he was threatened again by the Latin Folks. A few days later, he got a letter from an inmate stating that the Latin Folks had "burnt" him and he would be stabbed if he did not check himself into PC (Doc. 1, p. 6). Plaintiff was able to check back into PC and states he was housed there at the time he filed the instant complaint.

Plaintiff requests a permanent injunction preventing the Defendants from placing him back into general population; he does not request money damages.

**Discussion**

In *Farmer v. Brennan*, 511 U.S. 825 (1994), the Supreme Court held that "prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Id.* at 833 (internal citations omitted); *see also Pinkston v. Madry*, 440 F.3d 879, 889 (7th Cir. 2006). However, not every harm caused by another inmate translates into constitutional liability for the corrections officers responsible for the prisoner's safety. *Farmer,* 511 U.S. at 834. In order for a plaintiff to succeed on a failure to protect claim, he must show that he was incarcerated under conditions posing a substantial risk of serious harm, and that the defendants acted with "deliberate indifference" to that danger. *Id.*; *Pinkston*, 440 F.3d at 889. A plaintiff also must prove that prison officials were aware of a specific, impending and substantial threat to his safety, often by showing that he complained to prison officials about a *specific* threat to his safety. *Pope v. Shafer,* 86 F.3d 90, 92 (7th Cir. 1996).

A defendant in a failure to protect claim cannot "escape liability for deliberate indifference by showing that, while he was aware of an obvious, substantial risk to inmate safety, he did not know that the complainant was especially likely to be assaulted by the specific prisoner who eventually committed the assault." *Farmer*, 511 U.S. at 843 (a substantial risk of harm to a prisoner may exist where he "faces an excessive risk of attack for reasons personal to him or because all prisoners in his situation face such a risk"); *see also Hill v. Godinez,* 955 F. Supp. 945, 949 (N.D. Ill. 1997) (summary judgment denied for defendant who refused plaintiff's request for protective custody where plaintiff "apparently did everything except identify by name" the inmates who were threatening him, and plaintiff was then attacked by gang members). Under this authority, a plaintiff's inability to identify by name each inmate who threatened him does not make the threat insufficiently specific or credible.

When a plaintiff has actually been attacked by another inmate, if he is to succeed on a failure to protect claim, he must show that the defendants knew there was a substantial risk that those who attacked plaintiff would do so, yet failed to take any action. *See Sanville v. McCaughtry,* 266 F.3d 724, 733-34 (7th Cir. 2001). However, conduct that amounts to negligence or inadvertence is not enough to state a claim. *Pinkston*, 440 F.3d at 889 (discussing *Watts v. Laurent*, 774 F.2d 168, 172 (7th Cir. 1985)).

> A prisoner's interest in safety does not lead to absolute liability, however, any more than the state is the insurer of medical care for prisoners . . . . [T]he eighth amendment has a mental component. The eighth amendment addresses only punishment. Whether an injury inflicted by fellow prisoners . . . is "punishment" depends on the mental state of those who cause or fail to prevent it . . . . Other mental states, including total indifference to risks, come so close to deliberateness that courts treat them alike. Thus judges speak . . . of "deliberate indifference" or "recklessness" as the functional equivalent of intent. Although there are shadings of meaning here, total unconcern for a prisoner's welfare – coupled with serious risks – is the functional equivalent of wanting harm to come to the prisoner.

*McGill v. Duckworth*, 944 F.2d 344, 347 (7th Cir. 1991).

In Plaintiff's case, he was attacked and seriously injured approximately eleven years ago, and again in 2005, in connection with his former gang affiliation. Although several years have passed since the most recent physical attack, he has received recent threats indicating he continues to be at risk from the same gangs who previously harmed him, and for the same reasons that precipitated the earlier assaults. If Plaintiff were bringing a claim for failure to protect *after* having been the victim of another attack following the specific threats he has described herein and reported to prison officials, he would have pleaded sufficient facts for his deliberate indifference claim to proceed beyond preliminary review. Plaintiff is, in effect, seeking to mitigate his potential damages from a threatened attack by requesting prospective injunctive relief in the form of protective custody status based on ongoing specific threats. Plaintiff has repeatedly complained to Defendants about the threats to his safety, yet he was denied protective custody in February 2012. Although he was recently allowed to check back into PC, it appears that no decision has been made as to whether he may remain there, and Petitioner must again repeat the hearing process with no guarantee that his PC request will be granted. He thus faces the prospect of again being returned to general population, where he is vulnerable to attack.

The Supreme Court in *Farmer* indicated that injunctive relief would be an appropriate remedy for a prisoner under a credible threat of attack by another inmate. *Farmer v. Brennan*, 511 U.S. at 850-51 (district court on remand should address whether injunction would be appropriate based on evidence to be adduced regarding the likelihood of transsexual inmate's transfer to a setting where he could face greater threat). Prior to *Farmer*, courts recognized that a

prisoner need not wait until he is actually assaulted before he may obtain relief. *Ramos v. Lamm,* 639 F.2d 559, 572 (10th Cir. 1980); *Woodhouse v. Com. of Va.*, 487 F.2d 889, 890 (4th Cir. 1973); *see also Benefield v. McDowall*, 241 F.3d 1267 (10th Cir. 2001).

"Before a court may award permanent injunctive relief, a party must demonstrate (1) it has succeeded on the merits; (2) no adequate remedy at law exists; (3) the moving party will suffer irreparable harm without injunctive relief; (4) the irreparable harm suffered without injunctive relief outweighs the irreparable harm the nonprevailing party will suffer if the injunction is granted; and (5) the injunction will not harm the public interest." *Old Republic Ins. Co. v. Employers Reinsurance Corp.,* 144 F.3d 1077, 1081 (7th Cir. 1998), *citing Amoco Prod. Co. v. Vill. of Gambell,* 480 U.S. 531, 546 n. 12 (1987) (additional citations omitted).

At this stage of the litigation, the Court is unable to accurately determine whether Plaintiff will be able to succeed on the merits or be able to meet the other criteria he must show to obtain the permanent injunction he seeks. Therefore, it would be inappropriate to dismiss his complaint at this stage, and his claim shall receive further review.

**Filing Fee**

Plaintiff filed this action without pre-payment of the $350 filing fee, and also without filing a motion for leave to proceed without pre-payment of the fee. After being advised of the requirement to either pay the fee or seek permission to file in forma pauperis, Plaintiff notified this Court on May 24, 2012, that he had executed a voucher for full payment of his filing fee (Doc. 3). However, he could not control or predict the date on which prison officials would process his payment.

Due to the nature of Plaintiff's allegations, the Court determines that this matter should proceed without delay. However, should the filing fee payment not be received within a reasonable time, the action may be subject to dismissal.

**<u>Disposition</u>**

**IT IS ORDERED** that the Clerk of Court shall prepare for Defendants **ANDERSON, REDNOUR, GODINEZ, SAUERWINE** and **COWAN** (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

**IT IS FURTHER ORDERED** that, with respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

**IT IS FURTHER ORDERED** that Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document

submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge Frazier for further pre-trial proceedings.

Further, this entire matter is **REFERRED** to United States Magistrate Judge Frazier for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral.*

**IT IS FURTHER ORDERED** that if judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff.

Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: May 30, 2012**

*s/J. Phil Gilbert*
**United States District Judge**