IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| JOHN REGAN, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. **3:12-cv-00575-JPG-PMF** |
| | ) | |
| TERRY ANDERSON, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

**FRAZIER, Magistrate Judge:**

Before the Court is the Defendants' motion for summary judgment (Doc. 51) and Plaintiff John Regan's (Doc. 76) motion to substitute party. For the following reasons, it is recommended that the Defendants' motion for summary judgment (Doc. 51) be granted and that Plaintiff's (Doc. 76) motion to substitute party be denied as moot.

Plaintiff John Regan has been incarcerated with the Illinois Department of Corrections ("IDOC") since 2002 and is currently serving a 66-year prison term. He is eligible for parole in the year 2065. Before entering the IDOC, Regan was jailed in Cook County Jail in Chicago, Illinois. While jailed, Regan made a decision to terminate his affiliation with the "Y-LO Cobra" street gang, which is affiliated with the "Latin Folks" gang. He was severely beaten by his former gang members and hospitalized shortly thereafter. While incarcerated with the IDOC, Regan continued to renounce his affiliation. He received death threats as a result. While at Stateville Correctional Center ("Stateville") in 2005, Regan was involved in a fight with a "Gangster Disciples" gang member and placed in segregation. The gang member placed a "smash on sight" order (i.e. death threat) on him. He requested protective custody from the

1

IDOC. The IDOC granted the request and transferred Regan to Pontiac Correctional Center ("Pontiac"), where he remained in protective custody. In 2006, Regan began practicing Buddhism and became a pacifist.

In 2011, Regan was transferred to Menard Correctional Center ("Menard"), where he was placed in general population. Over the next year or more, Regan continually requested protective custody from Menard prison officials, including Defendants Cowan, Sauerwine, and Rednour ("Menard Defendants"). He was denied protective custody by these officials and began to appeal the issue through the IDOC administrative remedy process. He was interviewed in 2012 by Administrative Review Board ("ARB") chairperson Terry Anderson. Regan was again denied protective custody and remained in general population at Menard where threats to his safety by Latin Folks gang members purportedly resumed. He received a specific threat in the form of a letter that informed him that the Latin Folks had "burnt" him (i.e. he would be killed). Menard prison officials placed Regan in protective custody in response to the threat. Regan was re-transferred to Pontiac on June 10, 2013, where he remains in protective custody to this date.

Regan filed this lawsuit pursuant to 28 U.S.C. § 1983 on May 1, 2012 against the Menard Defendants and Defendants Terry Anderson and IDOC Director S.A. Godniez in their official capacities. He requested "[a] permanent injunction … in order to prevent me from being placed in general population and my rights violated." Doc. 1 at 7. The Defendants are not sued in their individual capacities, and Regan's request for relief did not include a prayer for damages.

The Defendants argue that they are entitled to summary judgment because Regan's request for injunctive relief is barred and moot. Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(a); *see Celotex Corp. v. Catrett*,

477 U.S. 317, 322 (1986); *Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 396 (7th Cir. 2000). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by … citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials...". FED. R. CIV. P. 56(c)(1)(A). The reviewing court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Spath*, 211 F.3d at 396.

In responding to a motion for summary judgment, it is incumbent upon the nonmoving party "to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof" at trial. *Celotex*, 477 U.S. at 323. The nonmoving party must do more than raise a metaphysical doubt as to the material facts. *Keri v. Board of Trustees of Purdue Univ.*, 458 F.3d 620, 628 (7th Cir. 2006), *cert. denied*, 549 U.S. 1210, 127 (2007), (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Rather, he "must come forward with specific facts showing that there is a genuine issue for trial." *Id.*

Regan's request for injunctive relief against the Menard Defendants is moot because these Defendants placed Regan in protective custody at Menard and he was transferred to another correctional facility. The Prison Litigation Reform Act "PLRA" provides as follows with respect to injunctive relief:

> Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs. The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right.

3

18 U.S.C. § 3626(a)(1). Accordingly, only prospective violations of a constitutional right may be enjoined. The alleged failure to protect violation at issue in this case was the Menard Defendants' failure to place Regan in protective custody. The officials placed Regan in protective custody some time before this lawsuit was filed. Under the PLRA, this is also probably the extent of relief available to Regan in an injunction. *See id.* (providing that injunctive relief must be narrowly drawn, extend no further than necessary to correct the violation, and the least intrusive means necessary to correct the violation). Assumingly, the case was allowed to proceed against the Menard Defendants because the violation (placing Regan back in general population) was capable of repetition. That potential risk has been nullified by Regan's June 2013 transfer to Pontiac. In this situation, the request for injunctive relief is moot unless the prisoner can demonstrate that re-transfer back to the same institution is likely. *See Higgason v. Farley*, 83 F.3d 807, 811 (7th Cir. 1996) (If a prisoner is transferred to another prison, his request for injunctive relief against officials of the first prison is moot unless "he can demonstrate that he is likely to be retransferred." *Moore v. Thieret*, 862 F.2d 148, 150 (7th Cir.1988)). "Allegations of a likely retransfer may not be based on mere speculation." *Id.* (citation omitted).

Regan has submitted no evidence tending to show that a re-transfer to Menard is likely. Without any substantiation, Regan did assert in his brief that he is only eligible to stay at Pontiac if he maintains protective custody status. In the event he lost protective custody status, Regan claims he would be transferred back to Menard or Stateville. These are conclusory statements that the Court finds unpersuasive to show that re-transfer to Menard is "likely." For the forgoing reasons, summary judgment should be granted for

the Menard Defendants and Regan's (Doc. 76) motion to substitute Menard Defendant Sauerwine (upon suggestion of death) should be denied as moot.

Regan's request for permanent injunctive relief against the remaining Defendants, Anderson and Godinez, should be denied because it runs afoul of the PLRA. Regan's complaint requests a permanent injunction to prevent his placement in general population. In his response to the instant motion for summary judgment, he stated:

> Plaintiff is requesting an injunction prohibiting Defendants from subjecting him to periodic reviews of his protective custody status, essentially making his P.C. status permanent. The threat of harm remains as long as the gang hit remains. Again, Plaintiff has already been assaulted twice because of this outstanding threat to his safety. As long as Plaintiff is subject to periodic reviews of his p.c. status, he is in danger of being placed in jeopardy…

Doc. 73 at 4. Essentially, Regan is asking the federal courts to dictate to the IDOC the custodial nature of his remaining term of imprisonment (a time period of over 50 years). Quite apparently, this request runs directly afoul of the PLRA's narrow tailoring, "no further than necessary to correct", and "least intrusive means" commands. 18 U.S.C. § 3626(a)(1). As alluded to earlier, the furthest any injunctive relief in this case could be drawn is to order the IDOC to remove Regan from general population and place him in some sort of temporary protective custody. The IDOC has gone one step further by transferring Regan to another institution. This is a step that the Court could not order. *See Williams v. McGinnis,* 755 F. Supp. 230, 231 (N.D. Ill. 1991) (citing *Meachum v. Fano,* 427 U.S. 215, 225, 96 S.Ct. 2532, 2538, 49 L.Ed.2d 451 (1976); *Shango v. Jurich,* 681 F.2d 1091, 1099 (7th Cir. 1982).

The periodic reviews would be a necessary piece of any injunctive relief ordered in this case. The federal courts could only order that Regan be placed in protective custody so long as Regan was able to prove a specific threat to his safety. *See Pope v. Shafer*, 86

F.3d 90, 92 (7th Cir. 1996) (In failure to protect cases, "[a] prisoner normally proves actual knowledge of impending harm by showing that he complained to prison officials about a specific threat to his safety." *McGill v. Duckworth*, 944 F.2d 344, 349 (7th Cir.1991)). Therefore, a necessary component of any injunctive relief ordered in this would be a requirement that prison officials periodically assess whether or not there actually exists a specific threat to Regan's safety. For this reason, the federal courts are incapable of fashioning an order making Regan's protective custody status permanent.

The Court is satisfied that the IDOC has protected Regan against specific threats to his safety. As described above, it has taken steps beyond what the Court could order it to do in this case. The periodic reviews of Regan's protective custody status are entirely appropriate. There is no injunctive relief that the Court could fashion in this case that would go beyond what the IDOC has done here to protect Regan's safety. For these reasons, Regan's request for an injunction is moot and summary judgment should be granted for the remaining Defendants.

For the forgoing reasons, it is recommended that Defendants' motion for summary judgment (Doc. 51) be granted and that Plaintiff's (Doc. 76) motion to substitute party be denied as moot. If this recommendation is adopted in its entirety, there will be no further issues requiring the Court's attention in this case.

**SO RECOMMENDED.**

**DATED: December 6, 2013.**

*s/ Philip M. Frazier*
**PHILIP M. FRAZIER**
**UNITED STATES MAGISTRATE JUDGE**